IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No. 1:17-CR-155** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| | : | |
| **MILTON MOSLEY** | : | **Judge Sylvia H. Rambo** |

# M E M O R A N D U M

Before the court is Defendant's motion to suppress physical evidence obtained as the result of a warrantless search of his vehicle and person. (Doc. 26.) For the reasons stated herein, the motion will be denied.

## I.   Background

### A.   Procedural Background

On May 10, 2017, a federal grand jury returned a three-count indictment charging Defendant Milton Mosley with: possession with the intent to distribute cocaine base in violation of 21 U.S.C. § 841 (Count 1); possession of a firearm by a felon in violation of 18 U.S.C. § 922(g) (Count 2); and possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) (Count 3). (Doc. 1.) Defendant entered a plea of not guilty to the charges on May 16, 2017. (Doc. 10.)

On November 27, 2017, Defendant filed a motion to suppress evidence (Doc. 26), followed by a supporting brief on December 28, 2017 (Doc. 30), wherein he moved to suppress all evidence seized from his person and vehicle on

the basis that Harrisburg City Police – Street Crimes Unit ("SCU") officers violated Defendant's Fourth Amendment rights against illegal search and seizure when they stopped, questioned, and ultimately searched Defendant and his vehicle without lawful consent. The Government filed a brief in opposition on January 9, 2018, arguing that the officers initially had a "mere encounter" with Defendant. (Doc. 33.) They further argue that even if the officers' actions rose to the level of an investigatory stop, they had reasonable suspicion for the stop and subsequent search of Defendant and his vehicle. (*Id.*) The court held an evidentiary hearing on January 30, 2018. At the suppression hearing, Defendant testified on his own behalf, and Harrisburg Police Department SCU Officers Darrin Bates and Nick Ishman testified for the Government.

## B.    <u>Facts</u>[1]

On January 4, 2017, at approximately 3:00 p.m., SCU Officers Bates and Ishman were patrolling the Allison Hill section of Harrisburg in an unmarked sports utility vehicle. The officers conducted an area search in the 1900 block of Park Street looking for drug activity and a wanted fugitive. Dauphin County Department of Public Safety previously received two telephone calls reporting drug transactions near 1925 Park Street. At approximately 5:31 p.m. on December 27, 2016, an anonymous caller reported that drugs were being sold from a Suzuki

---

[1] Unless otherwise noted, the following factual account represents the facts the court credits upon consideration of the testimony and exhibits presented during the evidentiary hearing on January 30, 2018.

Forenza with the license plate KCL8696 and that there was drug activity at 1925 Park Street. (Gov't Ex. 3.) The same day, at approximately 6:42 p.m., Tasha Wilkerson called to report that she personally observed drug activity at 1925 Park Street over the past four days. (Gov't Ex. 4.) Ms. Wilkerson provided her phone number and identified the seller as a black male known as "Booby," who drove a red 2006 Suzuki Forenza with the license plate KCL8696. (*Id.*) She observed the seller exit 1925 Park Street and serve a buyer in a white pickup truck while carrying a .380 caliber Taurus handgun. (*Id.*)

While driving west on Park Street on January 4, 2018, the officers slowed down as they approached 1925 Park Street and observed a man parked in a red Suzuki Forenza with the engine running in front of that address. The driver, later identified as Defendant, was sitting in the driver's seat with his head swaying as if he was listening to music. As the officers drove by the vehicle, Officer Bates observed a clear plastic sandwich bag sitting on Defendant's left leg that appeared to contain a white rocky substance which Officer Bates believed to possibly be cocaine base. Because of Officer Bates' observations, the officers looped around the block and once again drove west down Park Street. This time, when the officers passed the red Suzuki Forenza, neither observed the bag sitting on Defendant's lap.

The officers proceeded to park their vehicle approximately 1.5 car lengths in front of the Suzuki and approached the vehicle and Defendant on foot with Officer Bates on the driver's side and Officer Ishman on the passenger side.[2] Officer Bates made contact with Defendant and asked for his identification, but Defendant stated he left it inside his room at 1925 Park Street.[3] While Defendant and Officer Bates were talking, Officer Ishman smelled the odor of burnt marijuana and observed what appeared to be a marijuana roach in the ashtray of the Suzuki. Once Officer Ishman notified Officer Bates of his observation, Officer Bates bent down and also smelled the odor of burnt marijuana. Officer Bates then asked Defendant to turn off the vehicle and step outside.

Officer Bates informed Defendant that when they initially drove by, he saw what he believed to be cocaine base on Defendant's lap. Defendant stated that it was only marijuana and provided Officer Bates with a bag of marijuana from his pants pocket. Officer Bates told Defendant that he was not worried about a small amount of marijuana, but asked if he could search the vehicle. Defendant consented to a search of the Suzuki and the officers located a black .380 caliber

---

[2] Defendant testified that there were cars parked close to the front and rear of his vehicle and that the SCU vehicle blocked his car from leaving its parking space. Because of the proximity of these vehicles, Defendant felt he could not leave once the officers approached him. After hearing all the testimony and reviewing the pertinent exhibits, the court finds that Officers Bates and Ishman's account of the location of their vehicle and other vehicles on the street to be more credible than Defendant's version.

[3] At the hearing, Defendant testified that 1925 Park Street was a rooming house that he lived in with five other people.

Taurus handgun with a round in the chamber and six additional rounds in the magazine. Consequently, Defendant was placed under arrest and *Mirandized* by Officer Ishman. Officer Ishman searched Defendant incident to arrest and found a brown prescription bottle in Defendant's pocket containing seven small clear plastic bags of cocaine base.

## II.  <u>Legal Standard</u>

The Fourth Amendment to the United States Constitution grants individuals the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. As the United States Supreme Court has repeatedly held, "[t]he touchstone of the Fourth Amendment is reasonableness." *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). "Searches conducted absent a warrant are *per se* unreasonable under the Fourth Amendment, subject to certain exceptions." *United States v. Katzin*, 769 F.3d 163, 169 (3d Cir. 2014) (citing *United States v. Harrison*, 689 F.3d 301, 306 (3d Cir. 2012)). The two relevant exceptions here are the consent to search and the search-incident-to-arrest exceptions. It is well settled that one of the exceptions to a warrant and probable cause is a search conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).  As to the search-incident-to-arrest exception, it is based on the need to preserve evidence and maintain the safety of law enforcement, *see Chimel v. California*, 395 U.S. 752, 762-63 (1969), and

because a "custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Riley v. California*, 134 S. Ct. 2473, 2483 (2014).

Turning to seizures under the Fourth Amendment, courts have recognized three levels of interactions between police officers and members of the public: (1) consensual encounters where no seizure occurs; (2) brief investigatory stops that result in temporary seizures and must be based on reasonable suspicion; and (3) arrests that constitute seizures and require probable cause. *See United States v. Brown*, 765 F.3d 278, 288 (3d Cir. 2014). Because no seizure results from consensual encounters, no level of suspicion of criminal activity is required. *See United States v. Williams*, 413 F.3d 347, 352 (3d Cir. 2005) (stating that police officers do not violate the Fourth Amendment "merely by approaching individuals on the street or in other public places"). An interaction is consensual if "a reasonable person would feel free 'to disregard the police and go about his business.'" *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (quoting *California v. Hodari D.*, 499 U.S. 621, 628 (1991)). Once the police make a show of authority and a reasonable person would no longer feel free to leave, the encounter loses its consensual nature and an investigatory, or *Terry*, stop results for which police need to have an objectively reasonable suspicion of criminal activity, considering the

totality of the circumstances. *See Brown*, 765 F.3d at 288; *see also Navarette v. California*, 134 S. Ct. 1683, 1687 (2014). For the interaction between police and the member of the public to lawfully rise to the level of an arrest, the officers must have probable cause to make the arrest. *Brown*, 765 F.3d at 288 (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

## III.   Discussion

In the matter *sub judice*, Officers Bates and Ishman were patrolling a high-crime area in an unmarked vehicle. As they drove west on Park Street, Officer Bates observed Defendant in his vehicle with a clear plastic sandwich bag sitting on Defendant's leg that appeared to contain cocaine base. Based solely on Officer Bates' observation, the officers had reasonable suspicion to conduct an investigatory stop. However, the officers circled the block, parked their vehicle 1.5 car lengths in front of Defendant's vehicle to ensure Defendant could leave if desired, and approached Defendant on foot. The officers then smelled the odor of burnt marijuana and observed what appeared to be a marijuana roach in plain view during the consensual encounter. *See Brown*, 765 F.3d at 288 (quoting *Bostick*, 501 U.S. at 434) ("[A] Fourth Amendment seizure 'does not occur simply because a police officer approaches an individual and asks a few questions.'"). At this point, Officers Bates and Ishman certainly had reasonable suspicion – if not probable cause – that Defendant was engaging in criminal activity. Thus, the court finds that

Officers Bates and Ishman were justified in escalating the interaction to an investigatory stop by making a show of authority and requesting Defendant to turn off and exit his vehicle.[4]

After Defendant exited the vehicle and showed Officer Bates the bag of marijuana, Defendant consented to Officer Bates' request to search his vehicle. Consent is an established exception to the warrant requirement and, while consent must be voluntary, law enforcement is not required to advise a person that he has the right to refuse consent. *See Schneckloth*, 412 U.S. at 219; *United States v. Drayton*, 536 U.S. 194, 206-07 (2002). Based on the totality of the circumstances, Defendant's consent to search his vehicle was expressly and freely given. Pursuant to the consent exception, Officers Bates and Ishman had authority to search Defendant's vehicle and, therefore, the court will not suppress the Taurus handgun and rounds that were recovered during the vehicle search. Furthermore, the court will not suppress the brown prescription bottle containing cocaine base located in Defendant's pocket because the officers had probable cause to arrest Defendant and conduct a search incident to arrest of his person.

---

[4] While not discussed here as it is unnecessary to support the court's finding of reasonable suspicion, the telephone calls reporting drug activity at 1925 Park Street would only add to the officers' reasonable suspicion. *See Alabama v. White*, 496 U.S. 325, 328 (1990) (quoting *Illinois v. Gates*, 462 U.S. 213, 230 (1983)) (reiterating that a 911 call can establish reasonable suspicion as "an informant's 'veracity,' 'reliability,' and 'basis of knowledge' . . . are 'highly relevant in determining the value of his report'").

### III. Conclusion

As stated herein, Officers Bates and Ishman had the requisite reasonable suspicion to approach Defendant, followed by his consent to search his vehicle, and subsequent probable cause to arrest and search his person, which are sufficient to satisfy the requirements of the Fourth Amendment at each stage of Defendant's encounter with officers on January 4, 2017. Accordingly, all the evidence discovered during the search of Defendant and his vehicle were lawfully obtained and will be admissible at trial.

An appropriate order will issue.

s/Sylvia Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: April 16, 2018